**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Drake Clabourne, | No. CV-03-00542-TUC-RCC |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| Ryan Thornell, et al.,[1] | |
| Respondents. | |

Before the Court is Petitioner Scott Clabourne's Motion to Alter or Amend the Judgment Pursuant to Rule 59(e). (Doc. 94.) The motion is fully briefed. (Docs. 97, 98.) For the following reasons, Clabourne's motion is denied.

**<u>Background</u>**

The Court denied Clabourne's Amended Petition for Writ of Habeas Corpus on September 09, 2009. (Doc. 41.)[2] In doing so, the Court dismissed Claim 1 as procedurally defaulted. (*Id*. at 17.) Claim 1 alleges counsel was ineffective for not seeking to suppress Clabourne's confession at his resentencing. Under then-governing law, the Court rejected Clabourne's argument that the ineffective assistance of post-conviction relief (PCR)

---

[1] Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Ryan Thornell, the Director of the Arizona Department of Corrections, Rehabilitation and Reentry, is substituted for the former Director, David Shinn.

[2] "Doc." refers to numbered documents in this Court's electronic case docket.

counsel established cause and prejudice to excuse the default. (*Id.* at 15–16.)

On appeal, the Ninth Circuit vacated the denial of Claim 1 and remanded the claim to this Court for further proceedings in light of *Martinez v. Ryan*, 566 U.S. 1 (2012). *Clabourne v. Ryan (Clabourne IV)*, 745 F.3d 362, 383 (2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (2015). *Martinez* held that the ineffective assistance of PCR counsel can excuse the default of a claim of trial level ineffective assistance of counsel (IAC).

Upon remand, the Court found Clabourne had failed to demonstrate cause and prejudice under *Martinez* to excuse the default of Claim 1 and entered judgment denying the claim as procedurally defaulted and barred from federal review. (Docs. 92, 93.) Clabourne asserts that in doing so, the Court "misapprehended the law in two significant respects." (Doc. 94 at 4.)

**Applicable Law**

A motion to alter or amend judgment under Rule 59(e) is in essence a motion for reconsideration. Rule 59(e) offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enter., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also Rishor v. Ferguson*, 822 F.3d 482, 491–92 (9th Cir. 2016). The Ninth Circuit has consistently held that a motion brought pursuant to Rule 59(e) should only be granted in "highly unusual circumstances." *Id.*; *see also 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

Reconsideration is appropriate only if the court is presented with newly discovered evidence, if there is an intervening change in controlling law, or if the court committed clear error. *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam); *see School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

A motion for reconsideration is not a forum for the moving party to make new arguments not raised in its original briefs, *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925–26 (9th Cir. 1988); *see also Zimmerman v. City of Oakland*, 255 F.3d

734, 740 (9th Cir. 2001) (holding district court did not abuse its discretion by disregarding legal arguments and facts previously available but raised for the first time under Rule 59(e)), nor is it the time to ask the court to "rethink what the court ha[s] already thought through," *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D. Ariz. 1998). The fact that a petitioner disagrees with the court's conclusion is also an insufficient basis to seek reconsideration under Rule 59(e). *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.") (quotations omitted).

**Discussion**

 A. Admissibility of Clabourne's confession.

  Clabourne first asserts the Court misapprehended the law of limited admissibility set forth in Federal and State Rules of Evidence 703 and 705. Clabourne argues that the Court failed to consider these rules, which would have permitted the resentencing court to consider the contents of the inadmissible confession in evaluating the expert testimony without rendering the confession itself admissible.

  **1. Additional background**

  The procedural and factual background of this case is discussed in greater detail in this Court's order finding Claim 1 procedurally defaulted without excuse. (*See* Doc. 92 at 2–14.) Briefly, on the evening of September 18, 1980, Laura Webster entered the Green Dolphin Bar with a friend. The next day, Webster's body was found near the Santa Cruz River, naked and wrapped in a bloody sheet with a blue and white bandana tied tightly around her neck. An autopsy revealed that she had been strangled and then stabbed in the chest. There was also evidence of oral, anal, and vaginal intercourse just prior to death.

  Clabourne was incarcerated on burglary charges unrelated to the murder of Webster and had invoked his right to counsel when he was interviewed by Tucson Police Detective Luis Bustamante and confessed his involvement in Webster's death. Clabourne confessed

that he, along with co-defendants Larry Langston and Ed Carrico, convinced her to leave the bar with them to go to a party. While driving to a residential home, Langston stopped the car, pulled Webster out, and beat her. After he threw her back into the car Webster pleaded with Clabourne to protect her.

At the house, Langston beat Webster again and forced her to strip and serve the men drinks. Over a period of six hours, Langston and Carrico repeatedly beat and raped Webster. During this time, Clabourne also had sex with Webster but claimed it was consensual. At several points during the ordeal, Webster again pleaded with Clabourne to protect her from the others.

At the end of the evening, Langston told Clabourne to kill Webster. Clabourne maintained that he was in fear of his own life and wanted to let her escape but was scared Langston would kill him. He strangled her with a bandana that he carried with him. He then stated that Langston handed him a knife; Clabourne stabbed Webster twice and the three men wrapped her in a sheet and threw her in the riverbed.

The trial court allowed this confession to be admitted into evidence in Clabourne's trial and considered factors derived solely from the confession during sentencing.

The prosecution introduced evidence of other incriminating statements Clabourne made. Clabourne's girlfriend testified that Clabourne had admitted committing the crime on several occasions and that the bandana around the victims' neck was similar to one that belonged to Clabourne. Another acquaintance testified that Clabourne had confessed to killing a girl. A corrections officer testified that Clabourne told him, spontaneously, about the crime approximately a month before giving his taped confession. Clabourne told him he and another man picked a girl up from a bar and, while driving to a friend's house, the girl begged Clabourne not to let the other man hurt her, that she was afraid he might kill her. At the house, they continued to "party, drink and carry on" and Clabourne indicated he and the other man had sex with the girl. Clabourne confessed to then strangling her. He also stated the other man gave him a knife and told him to kill her, though he did not say anything about stabbing the victim. (Appx. 321.) A second corrections officer testified that

he overheard Clabourne tell another inmate, "Yeah, I raped her. She didn't want it but I know she liked it."

Subsequently, the Supreme Court in *Arizona v. Roberson*, 486 U.S. 675 (1988), held that such a subject who had invoked his right to counsel could not be questioned about other crimes, making Clabourne's confession prospectively inadmissible. *Clabourne IV*, 745 F.3d at 379 (citing *Roberson*, 486 U.S. at 684–85). Nonetheless, counsel did not move to suppress the prosecutor's use of the confession during resentencing in 1997. The prosecutor attached the confession to his sentencing memorandum and referred to facts from the confession throughout the aggravation/mitigation hearing.

The trial court resentenced Clabourne to death. Although the court found cruelty alone sufficient to establish death eligibility under A.R.S. § 13-701(F)(6), it also found that the murder had been committed in an especially heinous and depraved manner, the other component of the (F)(6) aggravator.[3] Though this finding was based in part on Clabourne's statements to Detective Bustamante, the court also found that Clabourne witnessed the repeated beatings and sexual assaults by other co-defendants and displayed a callous indifference to Webster's life, thus "demonstrating a heinous and depraved state of mind." (RT 08/14/97 at 8.) The Arizona Supreme Court affirmed the death sentence and Clabourne initiated habeas proceedings in 2003.

On habeas review, Clabourne asserted his resentencing counsel was ineffective for failing to seek suppression of his confession and that he was prejudiced because, without the confession, there was insufficient evidence to establish cruelty under A.R. S. § 13-

---

[3] "Because the elements of the (F)(6) factor—'heinous, cruel, or depraved'—are stated in the disjunctive, a finding of cruelty alone is sufficient to support an (F)(6) aggravating circumstance." *State v. Clabourne (Clabourne III)*, 194 Ariz. 379, 384, 983 P.2d 748, 753 (1999) (citing *State v. Gretzler*, 135 Ariz. 42, 51, 659 P.2d 1, 10 (1983)). Under Arizona law, a murder is committed in an especially cruel manner if "the victim consciously experienced physical or mental pain prior to death." *State v. Sansing*, 206 Ariz. 232, 235, 77 P.3d 30, 33 (2003) (quoting *State v. Trostle*, 191 Ariz. 4, 951 P.2d 869, 883 (1997)). The victim need not be conscious, however, when "each and every wound" is inflicted. *Sansing*, 206 Ariz. at 235, 77 P.3d at 33 (quoting *Trostle*, 191 Ariz. at 4, 951 P.2d at 883).

703(F)(6). As noted above, the Court dismissed the claim as procedurally defaulted, rejecting Clabourne's argument that the ineffectiveness of PCR counsel excused the default. (*See* Doc. 41 at 16.)

On appeal, following the Supreme Court's decision in *Martinez*, the Ninth Circuit remanded the confession-related IAC claim, concluding that there was "no dispute in this case about the deficient performance of Clabourne's post-conviction counsel, as the State concede[d] that his representation was deficient." *Clabourne IV*, 745 F.3d at 378. The Ninth Circuit, however, stopped short of finding that counsel's failure to object to use of the confession constituted ineffective assistance. *See id.* at 380. ("That there was a basis to object to the use of Clabourne's statement at resentencing (or to move to suppress it) does not by itself establish that Clabourne suffered from ineffective assistance through resentencing counsel's failure to make that objection.") In his supplemental *Martinez* brief, Clabourne argued that in the absence of his confession, the balance of the prosecution's evidence fails to meet the burden of proof necessary to establish the (F)(6) factor. (*See* Doc. 71 at 23.)

The Court found that the record supported "a finding that counsel were aware of the confession, its prospective inadmissibility, and the State's intent to rely on it to establish the sole statutory aggravating factor 'especially heinous, cruel, or depraved' under A.R.S. § 13-703(F)(6)." (Doc. 92 at 24.) The Court also found that Clabourne failed to overcome the presumption that defense counsel's actions were reasonable and strategic. (*Id.* at 37) Thus, the Court concluded that the default of Claim 1 could not be excused under *Martinez*, and again denied the claim as procedurally defaulted. (*Id.* at 40.)

The Court noted Clabourne had a duty to rebut the presumption that counsel acted competently by demonstrating that "his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." (*Id.* at 27) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).) The Court noted its responsibility to "affirmatively entertain" the range of possible reasons counsel proceeded as they did. (*Id.*) (citing *Miles v. Ryan*, 713 F.3d 477, 486 (9th Cir. 2013).)

Upon review of the record, the Court determined that it is "at least arguable" that a reasonable attorney could decide to forego challenging the resentencing court's use of Clabourne's confession in the circumstances present here. (*Id.*) (citing *Harrington v. Richter*, 562 U.S. 86, 106 (2011)). The Court found that at the time counsel returned to state court for the resentencing it would have been reasonable for counsel to believe that, even if they succeeded in suppressing the confession during resentencing, the (F)(6) aggravating factor would again be found by the resentencing court.[4] (*Id.* at 31.) The Court explained:

> There is no doubt that the murder was particularly senseless, and the victim was totally helpless at the hands of her captors, as the State pointed out on appeal and as evidenced by the victim's pleas for help . . . . As the resentencing court noted, Clabourne "was also a witness to the repeated beating and sexual assaults by other co-defendants. At the very least this Defendant displayed a callous indifference to Laura Webster's life, demonstrating a heinous and depraved state of mind." . . .
>
> Given the overwhelming likelihood the State would again establish the (F)(6) aggravating factor, with or without the confession, it was objectively reasonable for defense counsel to focus their efforts on establishing the strongest available case in mitigation, and the record demonstrates this is what counsel did. In pursuing this strategy, they provided their experts "with a more complete history of Clabourne and more information about the crime than they had received before trial," *Clabourne III*, 194 Ariz. at 383, 983 P.2d at 752, and *relied on Clabourne's confession in support of their mitigation theory*.

(*Id.* at 32) (citations omitted) (emphasis added). The Court further explained:

> [C]ounsel . . . at the sentencing phase, faced with a client convicted of first-degree murder, three counts of sexual assault (oral, anal, and vaginal

---

[4] In the first order denying the claim as procedurally defaulted in 2009, the Court considered the impact of the confession and found that, "first and foremost, other evidence supported the cruelty finding." (Doc. 41 at 16.) "[E]ven without Petitioner's confession, there was sufficient evidence from which a trier of fact could conclude that the victim feared for her life and suffered greatly before being killed." (*Id.* at 17.) Clabourne therefore failed to demonstrate that "no reasonable factfinder would have found, even without consideration of his confession, the existence of the cruelty prong of the (F)(6) factor." (*Id.*)

intercourse), and kidnapping, all unassailable findings during the sentencing proceeding, made a reasonable strategic decision to pursue a mitigation theory of duress that was *consistent with Clabourne's confession* and with the opinion of his expert. *Clabourne's confession provided evidence of duress* that his experts placed within the context of Clabourne's mental illness. Clabourne's experts explained that, due to Clabourne's mental illness and paranoia, he feared Langston and thus it was more likely he was manipulated by Langston into committing the murder.

. . .

Counsel's strategy to rely on the confession to support a claim of mental illness and duress was reasonable, comprehensible, and logically consistent with the guilt-phase presentation, and, in the words of his own expert, "a terribly important dynamic to present to the sentencing judge."

(*Id.* at 36–37) (emphasis added).

### 2. Analysis

Clabourne now contends that the Court "misapprehended the law" by failing to apply the law of limited admissibility set forth in Federal Rules of Evidence 703 and 705 and the Arizona Rules of Evidence 703 and 705. (Doc. 94 at 4.)

The Federal and State Rules of Evidence are identical and provide for the limited admissibility of facts underlying the opinions of defense experts. *See* Fed. R. Evid. 703, 705; Ariz. R. Evid. 703, 705. Under these rules, Clabourne argues, resentencing counsel could have admitted the expert testimony in support of his mitigation theory while not admitting the confession itself. The Court erred, Clabourne asserts, by "suppos[ing] that resentencing counsel strategically needed for Clabourne's *Edwards*-inadmissible confession to be substantively admitted because it underlaid the expert testimony that had been submitted on Clabourne's behalf," a flaw "immediately apparent" to anyone versed in the Rules of Federal Evidence. (Doc. 94 at 3.) "Resentencing counsel did not need for [the prosecutor] to substantively admit Clabourne's *Edwards*-inadmissible confession simply because it underlaid their experts' opinions." (*Id.*)

Clabourne misunderstands the Court's ruling. The Court previously held that, absent the confession, there was "sufficient evidence from which a trier of fact could conclude that the victim feared for her life and suffered greatly before being killed." (Doc. 92 at at

31) (citing Doc. 41 at 16–17.) Thus, in denying Clabourne's *Martinez* claim, the Court found that "at the time counsel returned to state court for the resentencing, it would have been reasonable for counsel to believe that, even if they succeeded in suppressing the confession during resentencing, the (F)(6) aggravating factor based on cruelty would still be found." (Doc. 92 at 31); *see also Clabourne IV*, 745 F.3d at 381 ("Other facts identified in the Arizona Supreme Court's discussion of the aggravating circumstances were supported by other evidence in the record. Multiple witnesses testified concerning incriminating statements made by Clabourne, including that the victim had been raped and that she had begged for help. Based on the autopsy she performed on the victim, the medical examiner testified at trial about the beating and sexual activity that the victim suffered before her death, as well as the strangling and stabbing.")

Additionally, the trial court had found there was "sufficient evidence of gratuitous violence to support a finding of depravity and heinousness. The victim was near death after the strangulation and the stabbing was unnecessary to accomplish the murder. Still defendant stabbed her twice, once through the heart." *Clabourne I*, 142 Ariz. at 348, 690 P.2d at 67. Clabourne did not challenge this finding on appeal.

Thus, this Court concluded, based on counsel's perspective at the time of resentencing, it was reasonable for counsel to believe that, even if they had successfully suppressed the confession, the (F)(6) factor would be established regardless. Based on this conclusion, the Court found that, rather than focus their efforts on challenging the admissibility of the confession, it was objectively reasonable for counsel to pursue their strongest case in mitigation. Counsel did so, conceding what was no doubt going to be proven with respect to the question of the (F)(6) aggravator that, "[w]ithout question, . . . this was a truly horrible case." (RT 8/8/97 at 26). Counsel thus attempted to establish, through the testimony of experts and through Clabourne's own words, that Clabourne believed he would have been killed if he had refused to kill Webster. (*See id.* at 38.) This mitigation theory had the added benefit of being consistent with the guilt phase testimony, during which the confession had been properly admitted under the controlling law at the

1 time. *See* ABA Guidelines § 10.10.1 (2003) ("Counsel should seek a theory that will be
2 effective in connection with both guilt and penalty, and should seek to minimize any
3 inconsistencies.")

4       In affirming the death sentence after resentencing, the Arizona Supreme Court
5 found beyond a reasonable doubt that the murder was especially cruel:

> [Here,] [Webster] suffered both mentally and physically. She was beaten and forced to undress and serve [Clabourne] and his friends drinks. In addition, she was raped over the course of a six hour period. She was obviously in great fear [for] her life as she begged [Clabourne] to protect her. The medical examiner testified that [Webster] had put up a tremendous struggle while being strangled, indicating a good deal of suffering. This evidence was sufficient to establish cruelty.

11 *Clabourne III*, 194 Ariz. at 384, 298 P.2d at 753 (citing *State v. Clabourne*, 142 Ariz. 335,
12 347-48, 690 P.2d 54, 66-67 (1984)).

13       Subtract the confession from this calculus, and the factors that remain still support
14 a finding of the (F)(6) aggravator. The victim was beaten, raped, pled for her life, and put
15 up a tremendous struggle. Add to this the trial court's finding, unchallenged by Clabourne,
16 that the murder was heinous and depraved because there was "sufficient evidence of
17 gratuitous violence to support a finding of depravity and heinousness. The victim was near
18 death after the strangulation and the stabbing was unnecessary to accomplish the murder.
19 Still defendant stabbed her twice, once through the heart." *Id.* at 348, 690 P.2d at 67. Thus,
20 counsel could reasonably assume that any attempt to prevent the trial court from again
21 finding the (F)(6) aggravating factor would have been futile.

22       Clabourne asserts that counsel could have pursued his case in mitigation by simply
23 presenting the experts' opinions without admitting the confession. Counsel could, he
24 argues, have presented evidence that Clabourne was not the mastermind, but a follower,
25 based on only his expert's testimony. But the admission of Clabourne's own words,
26 contemporaneous with his arrest and not based solely on expert testimony, declarations or
27 allocutions provided 15 years after he was convicted, provided stronger support for
28 counsel's theory of mitigation. If it was not clear from the order, the Court now clarifies

that the Court did not, as Clabourne now contends, suggest counsel's actions in admitting the confession were reasonable and strategic on the grounds that Clabourne's experts relied on the confession and mistakenly believed the confession needed to be admitted, but rather the Court found the confession itself was strong evidence in support of counsel's mitigation theory.

Clabourne argues counsel have "more and better ways" of presenting the content of the statement without "relying on the mere accident of the prosecutor attaching an otherwise inadmissible confession to his sentencing memorandum." (Doc. 94 at 5.) Clabourne suggests the statement could have been admitted via "a client's letter to the court, a probation interview, a psychological interview, Clabourne's allocution, his sworn testimony, his sentencing memoranda, sentencing letters from others, and statements by counsel." But these methods would not have overcome the difficulty pointed out by the prosecutor during sentencing, that, despite new evidence establishing Clabourne may have been schizophrenic or psychotic, no expert testified as to Clabourne's state of mind at the time of the offense. (*See* RT 8/8/97 at 54.) At the time of Clabourne's resentencing, it would have been reasonable, even imperative for counsel to attempt to establish a causal connection between the experts' mitigating evidence and the crime. At Clabourne's first sentencing, the sentencing court noted that Clabourne had not shown that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was a factor in the commission of the offense. (Doc. 81-6, Ex. F at 17–18); *see also Mckinney*, 813 F.3d 798 (noting that, during a time period that encompassed Clabourne's resentencing, evidence of a mental disorder "was relevant for nonstatutory mitigation only if it had a causal effect on the defendant's behavior in the commission of the crime at issue.") In this case, counsel acknowledged the need to establish a causal connection, and established that connection by presenting Clabourne's confession. (*See* RT 8/8/97 at 65.) Given the state of the law at the time, this was at least an arguably reasonable thing to do, and thus Clabourne has not established that the Court erred in finding his counsel's performance was not deficient.

A. Dr. Rao's testimony

Next, Clabourne asserts the Court relied on the trial testimony of Valerie Rao, M.D., the medical examiner, despite its demonstrable inconsistency with Dr. Rao's autopsy report. (Doc. 94 at 9–10.) Clabourne contends that the "Court erred in relying on the testimony that was admitted at trial and sentencing, and, significantly, at resentencing, all in violation of *Napue* [*v. Illinois*, 360 U.S. 264 (1959)]."[5] (*Id.* at 13.)

**1. Additional background**

Dr. Rao testified that the victim had several bruises on her body: "on her hand, on her arms, on her legs, … surrounding the stab wound[,] and she had them on her neck, too." (RT 11/17/82 at 256.) Among these bruises, ones on the victim's thumbs indicated to Dr. Rao that "she was struggling, and she sustained [them] probably in the struggle to get away from the inevitable, what happened to her." (*Id*. at 258.) Dr. Rao characterized these bruises as "defensive-type injuries." (*Id.*)

Clabourne asserted, in his supplemental *Martinez* brief, that Dr. Rao's testimony was incorrect as a matter of medical science and did not support a finding of physical pain or mental anguish. (Doc. 71 at 23–26.) Clabourne relied on that assertion, in part, to bolster his claim that he was prejudiced by the admission of the confession because without it the balance of the prosecutor's evidence failed to prove beyond a reasonable doubt that the murder was cruel. (Doc. 71 at 23, 26.) The Court rejected Clabourne's assertion as irrelevant to the Court's denial of the remanded claim because the Court decided the claim on the performance factor and did not consider the prejudice factor. (Doc. 92 at 29, n.13.)

---

[5] To the extent Clabourne is attempting to raise a new *Napue* claim (*see* Doc. 94 at 13) (asking the court to "order the parties to brief how the evidence admitted in violation of *Napue* should be treated by the Court . . . ."), the Court again notes that a motion for reconsideration is not a forum for the moving party to make new arguments not raised in its original briefs. *See Nw. Acceptance Corp.*, 841 F.2d at 925–26. Additionally, this argument—a new claim—falls outside the scope of the Ninth Circuit's remand to this Court. Moreover, Clabourne has not been permitted by this Court to amend his petition to include such a claim, nor has he been authorized by the Ninth Circuit to file a second or successive petition alleging such a claim. *See* 28 U.S.C. § 2244(b)(2).

The Court did not erroneously fail to consider this evidence because it was not relevant to the performance factor on which its ruling rested.

### 2. Analysis

Clabourne now asks the Court to put "procedural wrangling aside" and address the inconsistencies in Dr. Rao's testimony and the Court's erroneous reliance on that testimony in violation of *Napue*. (*See* Doc. 94 at 10, 13.) The Court, however, is not persuaded that Dr. Rao's testimony is inconsistent with her autopsy report.

In determining that counsel's performance was not unreasonable, the Court considered whether the (F)(6) cruelty finding was supported by evidence apart from the confession. In doing so, the Court implicitly relied on the presumption of correctness to which a state court's factual findings are entitled on federal habeas review. Clabourne bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Nothing in the state court record, including Dr. Rao's testimony, undermines the presumption of correctness that attaches to the state court's finding that the victim suffered defensive wounds.

Dr. Rao's statement in her autopsy report, that "[t]here are no defense type wounds noted," is under the section reporting Dr. Rao's observations of the "incised wounds" on the victim's "left chest." (Doc. 74-7, Ex. 1 at Ex. p. 40.)[6] Thus, the indication of no defensive-type wounds in this section of the report suggests the victim did not attempt to fight off the stabbing. Presumably, had she attempted to do so, the autopsy report would have indicated that there were cuts on the victim's arms, hands, or elsewhere besides the two major wounds through her lung and heart.

In a separate section of the autopsy report describing the blunt force injuries observed by Dr. Rao, there was no statement indicating whether the bruises could be

---

[6] The Court refers to the evidence appended to his supplemental *Martinez* brief and designated by both an exhibit number and a sequentially numbered exhibit page number as "Ex. [1–15] at Ex. p. [1–172]."

- 13 -

interpreted as defensive wounds. (*Id.*, Ex. 1 at Ex. p. 39.) Her testimony, therefore, describing the bruises on the victim's thumbs as defensive-type wounds, was not inconsistent with her autopsy report in this regard.

Finally, to the extent the Court relied on the fact that the victim struggled to bolster its finding that counsel did not act unreasonably by predicting that the resentencing court would again find the (F)(6) factor on resentencing, the Court notes that there was other evidence of cruelty, including other evidence of a struggle, apart from Dr. Rao's testimony that the discoloration on the victim's thumbs indicated defensive wounds. Specifically, Dr. Rao testified that the "tremendous hemorrhag[ing]" in the victim's face and eyes indicate she put up a "tremendous struggle" against the strangulation. (RT 11/17/82 at 248, 255.)

The Arizona Supreme Court noted this as a factor in determining that the evidence indicated a good deal of suffering and was sufficient to establish cruelty. *Clabourne III*, 194 Ariz. at 384, 983 P.2d at 753.

Evidence independent of Dr. Rao's testimony about defensive-type wounds established that the victim struggled. Clabourne therefore fails to demonstrate how, even if the Court disregards Dr. Rao's observations concerning defensive wounds, it would have impacted the Court's consideration of Clabourne's *Martinez* claim and its finding that he failed to rebut the presumption that counsel performed deficiently.

### Conclusion

Clabourne has failed to establish the "highly unusual circumstances" that would necessitate granting a motion under Rule 59(e), such as newly discovered evidence, an intervening change in the law, or manifest error by the Court. The motion is therefore denied. *See McDowell*, 197 F.3d at 1255.

Accordingly,

**IT IS HEREBY ORDERED** Clabourne's motion to alter or amend the judgment pursuant to Rule 59(e) (Doc. 94) is **DENIED**.

Dated this 13th day of February, 2023.

Honorable Raner C. Collins
Senior United States District Judge